IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 10-cv-03169-RBJ

CATHRYN M. LOPEZ,

     Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

     Defendant.

---

## ORDER

---

    This matter is before the Court on review of the Commissioner's decision denying plaintiff Cathryn Lopez' application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act ("the Act").[1]  Jurisdiction is proper under 42 U.S.C. § 405(g).  This dispute became ripe for decision by this Court upon the filing of plaintiff's Reply Brief on July 26, 2011.  The Court apologizes to the parties for the delay in resolving the case.

**Procedural History**

    This case has a long procedural history including four previous remands from the district court.  Ms. Lopez applied for DIB in November 1997.  R. 22-24.  Ms. Lopez alleged disability beginning in August 1995 because of fibromyalgia, repetitive trauma disorder, bilateral shoulder cumulative trauma disorder (CTD), and chronic bilateral shoulder and cervico-scapular myofascial pain syndrome with chronic sleep impairment.  R.49.  Ms. Lopez' claim was first

---

[1] Ms. Lopez married in 2004 and took the surname Lopez at that time.  Records before 2004 use her maiden name, Cathryn Besson.

administratively denied in January 1998.  A hearing was held in April 1999 by Administrative

Law Judge (ALJ) Wilcox.  R. 309.  ALJ Wilcox issued an opinion that found that Ms. Lopez was

not disabled in August 1999.  R. 10-19.  When the Appeals Council denied review in April 2001,

the Commissioner's decision became final and Ms. Lopez appealed to the district court.  In

March 2002 Judge Babcock reversed the ALJ's decision and remanded the case to the ALJ for

further consideration of the opinion of the State Workers' Compensation judge, the evidence

regarding Ms. Lopez' complaints of headaches and sleep disturbance, and Ms. Lopez' treating

physician's restrictions.  R. 405-419.

Following the remand, ALJ Wilcox held a hearing on December 2, 2002 and issued an

opinion denying Ms. Lopez benefits in February 2003.  R. 352-65, 589.  Ms. Lopez again

appealed the denial of benefits to the district court.  The Commissioner asked that the case be

remanded to the ALJ for further development of the record.  Judge Kane granted this motion in

December 2003.  R. 667-68.  ALJ Maddigan held a hearing in 2005 and issued an opinion

denying benefits in March 2006. R. 651-64, 797.  Ms. Lopez again appealed this decision to the

district court.

In April 2007 Judge Babcock again remanded this case to the ALJ.  R. 861-74.  In his

remand order, Judge Babcock ordered that the ALJ assess each of Ms. Lopez' treating

physician's opinions by the standards set forth in *Watkins v. Barnhart*, re-assess Ms. Lopez'

residual functional capacity in light of the resulting analysis of those opinions, and ensure that

any reliance on a vocational expert's hypotheticals relate with precision to Ms. Lopez' assessed

residual functional capacity.  R. 872-74.  Following this remand, ALJ Maddigan held hearings in

October 2007 and March 2008.  ALJ Madigan issued an opinion in March 2008 again denying

Ms. Lopez benefits.  R. 816-28.

Following this denial of benefits Ms. Lopez again appealed her denial of benefits to the district court.  The Commissioner filed an unopposed motion to remand the case to the ALJ.  R. 994.  Judge Kane granted this motion for remand in December 2008 and directed the ALJ to reassess Ms. Lopez' impairments and residual functional capacity, and to obtain vocational expert testimony to determine Ms. Lopez' ability to work.  *Id.*  ALJ Burgchardt held a hearing in September 2010, and in an order dated September 15, 2010 denied Ms. Lopez' claim for benefits.  ALJ Burchardt's decision became the final decision of the Commissioner and Ms. Lopez now appeals that decision to this Court.

**Facts**

Ms. Lopez was born in 1968 and was 29 years old at the alleged on set of her disability. R. 22.  Before her disability, Ms. Lopez completed high school and one year of college and worked various jobs including assembler, retail sales clerk, fast food worker, cashier, waitress, child care attendant, maid, home health aide, nanny, and bartender.  R. 53, 59-75, 596-98, 623-25.

Medical History

While working as an assembler in 1994, Ms. Lopez sustained a work-related injury that was diagnosed as fibromyalgia and myofascial pain syndrome causing neck and shoulder pain and headaches.  R. 102, 108, 138, 149, 152, 224.  Ms. Lopez stopped working in 1995 because of that injury.  Since her injury, Ms. Lopez has seen numerous doctors.

Following her injury, Ms. Lopez began seeing Dr. Ogrodnick.  In March 1995 Dr. Ogrodnick evaluated Ms. Lopez and placed restrictions on her work that included no across the table reaching and no overhead reaching.  R. 109.  Dr. Ogrodnick released Ms. Lopez to work in August 1995 with the restriction of no upper extremity repetitive actions.  R. 101.  In 1996 Dr.

Ogrodnick determined that Ms. Lopez had reached maximum medical improvement and completed a report.  R. 138.  In his report Dr. Ogrodnick explained that Ms. Lopez experienced a high degree of variability from one visit to the next for her cervical range of motion and range of motion for her shoulders.  R. 141.  Dr. Ogrodnick found that Hawkins impingement maneuvers were painful; virtually all structures about the shoulders were tender; motor strength of virtually all muscles in Ms. Lopez' neck, shoulders, and upper extremities was limited by Ms. Lopez' pain; and the upper extremities were also diffusely tender upon palpitation.  R. 141.  He also found multiple trigger points throughout the upper and lower back and the thighs.  *Id.*  Dr. Ogrodnick determined that Ms. Lopez sustained a 17 percent whole person impairment.  *Id.*  He also found several permanent physical restrictions based upon a work capacity assessment that was performed in August 1996: (1) lifting a maximum of 15 pounds on an occasional basis only; (2) no overhead reaching or sustained static bending; (3) stooping limited to a frequent basis; and (4) squatting, crawling, horizontal reaching, writing, and fine motor activities limited to an occasional basis only.  R. 141-42.

Dr. Ogrodnick opined that Ms. Lopez' medical condition had much more of an impact on her life than it should have. R. 142.  He explained that Ms. Lopez' medical condition was further complicated by her intolerance of standard medications and noted that Ms. Lopez remained inactive despite the encouragement of many doctors to stay active.  *Id.*  The doctor explained that the "recommendation for improved personal fitness is virtually unanimous among all of her medical providers."  *Id.*  He recommended that Ms. Lopez seek employment and remain active. R. *Id.*

Following her injury in 1994, Ms. Lopez also saw Dr. Light.  Dr. Light completed a report in March 1996 recommending that Ms. Lopez could return to work.  R. 174.  In the report

Dr. Light explained that Ms. Lopez had a limited range of motion and flexion of the neck.  R. 174.  Dr. Light also observed "exquisite tenderness to palpitation."  *Id.*  The doctor opined that Ms. Lopez was operating under the misconception that if she was not active her pain would go away, whereas in actuality it was important for Ms. Lopez to work through the pain and become more active.  R. 175.  In his report Dr. Light included the following restrictions: (1) no overhead reaching; (2) no lifting over 10 pounds; (3) no pushing or pulling over 25 pounds; (4) and no repetitive upper extremity use.  *Id.*  Dr. Light noted that Ms. Lopez asked him why he was recommending that she could return to work.  R. 174.  He explained that with the restrictions he was giving, she would be able to work.  R. 174-75.

During this time Ms. Lopez was also examined by Dr. Bray, a rheumatologist.  R. 119.  Dr. Bray concluded that Ms. Lopez' pain was likely due to rotator cuff tendonitis and fibromyalgia.  R. 120.

In April 1997 Dr. Shahzadi examined Ms. Lopez for an independent medical examination.  R. 177, 865.  Dr. Shahzadi reviewed Ms. Lopez' medical records and completed an examination of Ms. Lopez. She concluded that Ms. Lopez suffered from bilateral shoulder cumulative trauma disorder with chronic bilateral shoulder and cervico-scapular myofascial pain syndrome with chronic sleep impairment.  R. 180.

Ms. Lopez began seeing Dr. Parker in November 1998.  R. 308.  Dr. Parker saw Ms. Lopez for medical acupuncture treatments and osteopathic manual treatments through at least 2007.  R. 308, 548.  Dr. Parker explained that Ms. Lopez had been diagnosed with chronic myofascial pain and cervical, thoracic and lumbar strain based upon documentation of objective palpatory exams, range of motion exams, and evaluations of Ms. Lopez' emotional and physical status on a number of occasions.  R. 308.  Dr. Parker opined that "[d]ue to the fact that the

patient has had a dramatic consistency of presentation and physical examination over the years leads me to believe that this patient is truly and most definitely permanently injured as it relates to her work related injuries." *Id.*

Ms. Lopez also saw Dr. Hall beginning in 1997 through at least 2002. In a December 2001 report Dr. Hall explained that in 2000 Ms. Lopez was primarily seeing Dr. Parker for acupuncture to keep her symptoms under control. R. 551. In late 2001 Ms. Lopez reported worsening symptoms that were not being controlled with acupuncture treatments. R. 551. In the past Dr. Hall had administered trigger point injections to Ms. Lopez. *Id.* In December 2001 Dr. Hall determined that Botox injections would be appropriate based upon the "chronicity and severity" of Ms. Lopez' symptoms. *Id.* Dr. Hall administered the Botox injections on December 12, 2001. Ms. Lopez reported a positive response to the injections on December 21, 2001. *Id.* In February 2002 Dr. Hall reported that Ms. Lopez was started on a new rehabilitative effort using exercise equipment. R. 548. Ms. Lopez reported some improvements including an increased range of motion in her thoracolumbar area and a reduction of pain in the morning. *Id.* Dr. Hall opined "[t]hings are improving slowly." *Id.* Dr. Hall did not make a recommendation as to work or mobility restrictions.

Ms. Lopez underwent several other evaluations. In his 2007 opinion, Judge Babcock provided a helpful summary:

> On January 3, 1998 Dr. Michael Finch performed a consultative examination and concluded that Plaintiff was "totally and completely disabled." On January 21, 1998, a non-examining physician evaluated Plaintiff's residual functional capacity ("RFC") and concluded that she had a capacity for a full range of light work. A second such State Agency RFC evaluation, on July 29, 1998, concluded that Plaintiff should be limited to: lifting 20 pounds occasionally and 10 pounds frequently, occasional stooping and overhead reaching, and fine manipulation limited to frequently but not constant, as well as avoidance of cold weather. On April 8, 1998, a Colorado Worker's compensation Division ALJ determined that Plaintiff was "permanently and totally disabled as a result of her occupational disease of fibromyalgia or cumulative trauma disorder."

R. 865.

Vocational Examinations

In 1997 an employability evaluation was completed by the office of Bonnie Ruth, Ph.D., C.R.C., C.C.M.  R. 198.  Cynthia Bartmann, a certified insurance rehabilitation specialist and certified case manager completed the report.  *Id.*  Ms. Bartmann evaluated Ms. Lopez' medical history including her work restrictions; her work history; her education; and her training.  R. 198-207.  Regarding employability, Ms. Bartmann used a program that matches a client's work experiences to job titles using current physical limitations.  She found that Ms. Lopez had lost access to 94% of the jobs for which she had access pre-injury.  R. 207.  Ms. Bartmann then manually sorted the remaining jobs to remove occupations that Ms. Lopez did not have training, jobs that do not become available, and jobs that are physically unsuitable.  *Id.*  Ms. Bartmann determined that Ms. Lopez lost access to 100% of jobs in the job market and determined that it would be impossible for Ms. Lopez to find employment.  *Id.*

Vocational experts also testified at the many administrative hearings.  At the most recent hearing in September 2010, ALJ Burgchardt presented the vocational expert (VE) with two hypotheticals to assess the work available to Ms. Lopez.  In the first hypothetical the ALJ asked the vocational expert to assume an individual with the same age, education, and work experience as Ms. Lopez who could lift or carry up to 10 pounds frequently and 15 pounds occasionally.  This hypothetical person could stand or walk with normal breaks for a total of six hours in an eight hour workday and could sit with normal breaks for six hours in an eight hour work day.  This person could perform pushing and pulling motions with upper and lower extremities within the weight restrictions given.  The person could perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handing and reaching, however, fine

manipulation would be limited to frequent and not constant. R. 1181. The vocational expert concluded that based upon these restrictions there would be jobs available. R. 1182. These jobs included a credit checker, order clerk, or surveillance system monitor. *Id.*

In the second hypothetical the ALJ asked the VE to assume all of the restrictions from the first hypothetical with the additional limitation of only occasional squatting, crawling, horizontal reaching, writing, and fine motor activities. R. 1183. In response to these restrictions, the VE determined that there would be no work available because of the limitation on horizontal reaching. R. 1183-84.

**ALJ's Opinion**

In her September 2010 opinion, ALJ Burgchardt evaluated Ms. Lopez' disability claim using the five step analysis required by the Social Security regulations. 20 CFR 404.1520(a). Because Ms. Lopez stopped working in 1995, the ALJ determined that her insured status expired December 31, 2001. Accordingly, Ms. Lopez needed to show that her disability began on or before December 31, 2001. Further, at the 2010 hearing, Ms. Lopez testified that she was able to return to work full time in August 2008 at a Comcast call center. Accordingly, Ms. Lopez' period of disability closed in August 2008.

At the first step of analysis, the ALJ determined that Ms. Lopez did not work at levels rising to substantial gainful activity through her date last insured. ALJ Opinion, 4. At the second step the ALJ determined that Ms. Lopez' severe impairments were headaches and fibromyalgia. *Id.* The ALJ then determined at step three that these impairments were not listed impairments. *Id.*

Before determining Ms. Lopez' ability to perform past relevant work at step four, the ALJ determined Ms. Lopez' residual functional capacity (RFC). In her opinion, the ALJ found

that Ms. Lopez had an RFC that allowed her to perform sedentary work as defined in 20 CFR 44.1567(a) with the following limitations: claimant could lift or carry 10 pounds frequently and 15 pounds occasionally; could stand and/or walk, with normal breaks for a total of six hours in an eight hour workday; could sit, with normal breaks, for a total of six hours in an eight hour workday; could push and pull with her upper and lower extremities within the aforementioned weight restrictions; could perform activities requiring bilateral manual dexterity for both gross and fine manipulation with handling and reaching but bilateral fine manipulation would be limited to frequently, not constantly; could occasionally perform the postural activities of stooping, crouching and crawling; should not climb ladders, ropes or scaffolds; should avoid overhead reaching bilaterally; should avoid sustained static bending; could frequently climb and kneel and should avoid extreme cold. *Id.* at 4-5.

In making this determination, the ALJ relied heavily on Dr. Ogrodnick's opinion but did not assign it controlling weight. The ALJ assigned "little" weight to Dr. Parker's opinion. Bonnie Ruth's opinion was also given little weight because it was not a medical opinion but rather a vocational evaluation. The Colorado Worker's Compensation decision was "considered, but was accorded little weight." The opinions of Dr. Finch and Dr. Shahzdi were also assigned little weight. *Id.* at 7-8.

At the fourth step the ALJ determined that Ms. Lopez was unable to perform any past relevant work. *Id.* at 9. As a result, the analysis went on to step five where the Commissioner has the burden to show that based on her RFC, age, education, and work experience, Ms. Lopez is still able to perform work that exists in the national economy. Based upon the VE's opinion the ALJ determined that there was work available in the national economy that Ms. Lopez would

be able to perform. *Id*. at 10. Therefore, the ALJ determined that Ms. Lopez was not disabled. *Id.* at 10-11.

### Standard of Review

This appeal is based upon the administrative record and briefs submitted by the parties. In reviewing a final decision by the Commissioner, the role of the District Court is to examine the record and determine whether it "contains substantial evidence to support the Secretary's decision and whether the Secretary applied the correct legal standards." *Rickets v. Apfel*, 16 F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it is overwhelmed by other evidence in the record. . . ." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). Substantial evidence requires "more than a scintilla, but less than a preponderance." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2007). Evidence is not substantial if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

### Conclusions

Ms. Lopez challenges the ALJ's September 15, 2010 unfavorable decision for four reasons. Ms. Lopez argues that the ALJ failed properly to consider the other agency determinations, violated the medical opinions standard, and failed properly to determine Ms. Lopez' residual functional capacity. She argues that the Commissioner did not establish his burden at step five of the sequential evaluation process.

<u>Other Agency Determinations</u>

Ms. Lopez argues that the ALJ erred when she gave "little" weight to Judge Stuber's Colorado Worker's Compensation decision. In 1998 Judge Stuber determined that Ms. Lopez was disabled. R. 42-44. "Although another agency's determination of disability is not binding on the Social Security Administration, it is evidence that the ALJ must consider and explain why

he did not find it persuasive." *Grogan v. Barnhart*, 399 F.3d 1257, 1262-63 (10th Cir. 2005).

ALJ Burgchardt explained that Judge Stuber's decision was "considered, but was accorded little

weight." ALJ Opinion, 8.  The ALJ explained that the criteria used in the determination of

worker's compensation entitlement and the criteria used under the Social Security Act were very

different.  *Id.*  Judge Stuber's opinion "did not reflect objective pathology, by way of medically

acceptable clinical or laboratory diagnostic techniques, consistent with disability under the Act."

*Id.*  Additionally, the ALJ explained that Dr. Stuber's opinion relied heavily on Dr. Ruth's

opinion, and she accorded Dr. Ruth's opinion little weight because it was vocational rather than

medical and based on a single observation.  *Id.*

This Court concludes that the ALJ provided an adequate explanation for her decision.

Accordingly, she did not err when she accorded Judge Stuber's opinion little weight.

Medical Opinions Standard and RFC

Ms. Lopez argues that the ALJ did not properly weigh the medical opinions of Ms.

Lopez' treating physicians.  Treating physicians' opinions are generally given controlling

weight.  *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003).  "The treating physician's

opinion is given particular weight because of his unique perspective to the medical evidence that

cannot be obtained from the objective medical findings alone or from reports of individual

examinations, such as consultative examinations or brief hospitalizations."  *Doyal v. Barnhart*,

331 F.3d 758, 762 (10th Cir. 2003).

Because of the importance of a treating physician's opinion, there is a specific sequential

analysis that an ALJ must follow in evaluating a treating physician's opinion:

> An ALJ must first consider whether the opinion is well-supported by medically
> acceptable clinical and laboratory diagnostic techniques.  If the answer to this question is
> "no," then the inquiry at this stage is complete.  If the ALJ finds that the opinion is well-
> supported, he must then confirm that the opinion is consistent with other substantial

evidence in the record.  In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Robinson v. Barnhart,* 366 F.3d 1078, 1082 (10th Cir. 2004)(quoting *Watkins,* 350 F.3d at 1300) (internal citations omitted).  Even if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighted using all of the factors provided in 20 C.F.R. §§ 404.1527 and 416.927." *Id.* (quoting *Watkins*, 350 F.3d at 1300).  The factors to be considered are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* (quoting *Watkins,* 350 F.3d at 1301).

An ALJ must give specific reasons for the weight assigned to a treating physician's opinion so that subsequent reviewers can determine the weight assigned and the reason for that weight.  *Id.*  If an ALJ rejects a treating physician's opinion completely, she must then "give specific, legitimate reasons for doing so."  *Id.* (quoting *Watkins,* 350 F.3d at 1301).  "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion."  *McGoffin v. Barnhart,* 288 F.3d 1248, 1252 (10th Cir. 2002).  Further, the ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.  *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004).

The Court concludes that the ALJ's analysis of Ms. Lopez' treating physicians was deficient. First, in the ALJ's decision, Dr. Parker's opinion was given "little, and certainly not controlling, weight." ALJ Opinion, 11. As a treating physician, Dr. Parker's opinion was entitled to controlling weight if it was well supported by medically acceptable clinical and laboratory diagnostic techniques and was consistent with other substantial evidence is the record. *See Robinson,* 366 F.3d at 1082. Even if Dr. Parker's opinion was not entitled to controlling weight, as a treating physician's opinion, it was entitled to deference. *Id.* Further, if the ALJ determined that controlling weight was not appropriate, then the six factors listed above needed to be used to analyze the weight to be given Dr. Parker's opinion. *Id.*

The ALJ did not complete the required analysis. In her opinion, the ALJ did not discuss the first prong of the analysis, i.e., whether Dr. Parker's assessment was well-supported by medically acceptable clinical and laboratory diagnostic techniques. Instead, she went straight to step two of the analysis, whether it was consistent with other substantial evidence in the record. The ALJ determined that Dr. Parker's assessment prepared in September of 2000 was inconsistent with his own treatment records. In his 2000 report, Dr. Parker stated that "[d]ue to the fact that the patient has had a dramatic consistency of presentation and physical examination over the years leads me to believe that this patient is truly and most definitely permanently injured as it relates to her work related injuries." R. 308. The ALJ concluded that "this statement was at odds with [Dr. Parker's] previous treatment notes that observed claimant to have only vague musculoskeletal complaints, sporadic mentions of headaches and improvement with treatment." ALJ Opinion, 8.

Dr. Parker treated Ms. Lopez for nearly ten years, and the record contains nearly two hundred pages of his treatment notes. R. 288-307, 554-85, 705-91, 1097-1142. The decision to

reject Dr. Parker's opinion as inconsistent with his own medical notes required the ALJ to make speculative inferences and credibility judgments based on her own lay opinion.  Under *McGoffin v. Barnhart,* this is not the proper role for an ALJ in assessing a treating physician's opinion. 288 F.3d 1248, 1252 (10th Cir. 2002).

Even assuming that the ALJ's analysis that Dr. Parker's opinion was not entitled to controlling weight was proper, nevertheless, as a treating physician, Dr. Parker's opinion was still entitled to deference.  *Robinson,* 366 F.3d at 1082.  An ALJ's decision must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and reasons for that weight."  *Watkins,* 350 F.3d at 1300.  The ALJ determined that Dr. Parker's opinion was entitled to "little" weight.  In making this determination, the ALJ did not address the six factors that are required to be considered.  Some of the factors to consider were especially relevant and warranted consideration.  There was no discussion of the length of Ms. Lopez' treatment relationship with Dr. Parker or the nature and extent of that relationship even though Ms. Lopez saw Dr. Parker for treatment for nearly a decade.  The ALJ said that Dr. Parker's 2000 opinion was not supported by his treatment notes, but she did not address whether it was supported by other medical evidence or the record as a whole.  The ALJ's analysis did not contain sufficient information to explain to future reviewers why, as a treating physician, Dr. Parker's opinion was accorded so little weight.

A second problem with the ALJ's opinion is her selective adoption of Dr. Ogrodnick's opinion.  The ALJ explained the weight given to Dr. Ogrodnick's opinion as "great, but not controlling."  She acknowledged that Dr. Ogrodnick was a "treating physician with a long relationship with the claimant" but provided no information as to why his opinion was not entitled to controlling weight.  ALJ Opinion, 7.  Instead, the ALJ "adopted, and gave great

weight to the majority of Dr. Ogrodnick's opinion" but rejected the portion of his opinion that limited Ms. Lopez' writing and fine motor activities to "occasional." *Id.* Further, Dr. Ogrodnick's opinion limited horizontal reaching to occasional, but the ALJ did not include this limitation and did not explain the omission. This is significant because the vocational expert testified that limiting horizontal reaching to occasional would preclude Ms. Lopez from being able to work. R. 1183-84.

The ALJ failed to explain why she did not accord Dr. Ogrodnick's opinion controlling weight. The ALJ determined that "ongoing records of treatment reflect symptoms, and clinical and laboratory data, were consistent with the conclusions of Dr. Ogrodnick." ALJ Opinion, 7. If a treating physician's opinion is supported by clinical and laboratory data and is consistent with other evidence in the record it is entitled to controlling weight. *Watkins,* 350 F.3d at 1300. Although the ALJ did not complete the required two step analysis, her opinion suggests that Dr. Ogrodnick's opinion was supported by medical evidence and consistent with the record. Accordingly, it was entitled to controlling weight.

Next, "[t]he ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." *Robinson*, 366 F. 3d at 1083. The ALJ adopted all of Dr. Ogrodnick's recommended restrictions in determining the RFC except for limitations on horizontal reaching and fine motor manipulation. The ALJ explained that she was distinguishing Dr. Ogrodnick's opinion on writing and fine motor activities, because Dr. Ogrodnick did not define "occasional," and because Dr. Ogrodnick urged Ms. Lopez to be active and seek out employment. The ALJ pointed to nerve conduction studies that were conducted two years prior that had normal results. Finally, she thought it was significant that, as a single mother, Ms. Lopez was able to manage her household.

Dr. Ogrodnick's use of "occasional" without defining the term should not have precluded the ALJ from using his opinion.  The descriptor "occasional" was used by Dr. Ogrodnick to describe limitations for more than just writing, fine motor activities, and horizontal reaching.  Dr. Ogrodnick also said that Ms. Lopez could lift a maximum of fifteen pounds *occasionally* and could squat and crawl *occasionally*.  R. 141-42.  The ALJ adopted those recommendations as part of Ms. Lopez' RFC with the descriptor "occasionally." ALJ Opinion, 4-5.  Therefore, "occasionally" was a sufficient descriptor for ALJ to understand Dr. Ogrodnick's limitations for Ms. Lopez and does not explain the ALJ's decision not to include Dr. Ogrodnick's limitations of only occasional fine motor manipulation and writing.

Next, the ALJ said that these restrictions were rejected because Dr. Ogrodnick encouraged Ms. Lopez to seek employment.  Dr. Ogrodnick's suggested that Ms. Lopez' work is not necessarily inconsistent with the limitation he prescribed of no writing, fine motor manipulation, or horizontal reaching.  However, he did not say what kind of work Ms. Lopez should be seeking or that she should be seeking employment beyond the limitations he prescribed.  Further, his report was written in October 1996, whereas the VE testimony that horizontal reaching restrictions would lead to no available work was not given until a hearing in 2010.  Thus, Dr. Ogrodnick's recommendation of no writing, fine motor manipulation or horizontal reaching is not necessarily inconsistent with his recommendation that Ms. Lopez seek work.

The ALJ also looked to nerve conduction studies showing normal results to support the contention that Ms. Lopez was able to perform fine motor manipulation.  "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they 'outweigh' the treating physician's report, not the other

16

way around." *Gotacher v. U.S. Dept. Health and Human Servs.,* 52 F.3d 288, 290 (10th Cir. 1995) (quoting *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir.1988)).  The ALJ did not do this analysis.  She did not explain whether the nerve conduction studies were incompatible with Dr. Ogrodnick's opinion, or if they were incompatible, whether they outweighed Dr. Ogrodnick's opinion.

Further, the ALJ considered the fact that Ms. Lopez was able to manage her household as evidence that Ms. Lopez was able to perform fine motor manipulation.  An "ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain. The sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity." *Thompson v. Sullivan,* 987 F.2d 1482, 1490 (10th Cir. 1993).  The fact that Ms. Lopez was able to maintain her home and play with her son is not substantial evidence to support the assertion that Ms. Lopez was capable of frequent fine motor manipulation.

Finally, the ALJ did not discuss why Dr. Ogrodnick's recommendation of no horizontal reaching was not included in Ms. Lopez' RFC.  This limitation was significant in limiting Ms. Lopez' job prospects, but the ALJ provided no explanation.

Accordingly, it was error for the ALJ not to accord Dr. Ogrodnick's opinion controlling weight and only use those portions of his recommendations that supported a finding of no disability.

Because the ALJ did not properly consider Dr. Parker's opinion or Dr. Ogrodnick's opinion, she also erred in determining Ms. Lopez' RFC.  As discussed above there is not substantial evidence to support the ALJ's decision to include all of Dr. Ogrodnick's recommended restrictions except limitations on horizontal reaching and fine motor manipulation.

The evidence in the record supports those limitations and thus they should have been included in Ms. Lopez' RFC.

### Commissioner's Burden at Step Five

At step five of the evaluation process the burden is on the Commissioner to show that jobs exist in the national economy that the claimant can perform. *Williams v. Bowen*, 844 F.2d 748, 760 (10th Cir. 1988). To establish that jobs exist in the national economy, the Commissioner can rely on opinions by vocational experts based on hypothetical inquiries. However, "such inquiries must include all (and only) those impairments borne out by the evidentiary record." *Evans v. Chater,* 55 F.3d 530, 531 (10th Cir. 1995).

At the administrative hearing in 2010 the VE analyzed a hypothetical based upon Ms. Lopez' RFC. Under those limitations the VE determined that there were jobs available to Ms. Lopez in the national economy. R. 1182. However, when the VE was asked whether there were jobs available to Ms. Lopez if her horizontal reaching was also limited, the VE testified that there would not be jobs available. R. 1183-84. As previously discussed, it was error for the ALJ to not include limitations on horizontal reaching or fine motor manipulation. Therefore, the hypothetical in which limitations on horizontal reaching and fine motor manipulation were not included does not satisfy the Commissioner's burden because it did not include all of the limitations established in the evidentiary record. Rather, the VE already testified that including limitations on horizontal reaching and fine motor manipulation meant that jobs did not exist in the national economy that Ms. Lopez could perform. Accordingly, the Commissioner did not meet his burden at step five of the analysis. Because the Commissioner did not meet his burden at step five, the ALJ's decision that Ms. Lopez is not disabled must be reversed.

### Remedy

Ms. Lopez argues that if this Court reverses the ALJ's decision a remand for an immediate award of benefits is appropriate.  The Commissioner argues that if the ALJ's decision is not affirmed that remand for further proceedings is appropriate rather than remand for benefits. "[O]utright reversal and remand for immediate award of benefits is appropriate when additional fact finding would serve no useful purpose."  *Dollar v. Bowen,* 821 F.2d 530, 534 (10th Cir. 1987).  Ms. Lopez' application for disability insurance benefits was filed fifteen years ago and since that time there have been four remands and six administrative hearings.  The record now exceeds 1100 pages.  The Commissioner "is not entitled to adjudicate a case *ad infinium* until it correctly applies the proper legal standard and gathers evidence to support its conclusion." *Sisco v. U.S. Dept. of Health and Human Servs.,* 10 F.3d 739 (10th Cir. 1993).  The record supports the determination that Ms. Lopez is disabled within the meaning of the Social Security Act.  Further proceedings would only delay the award of benefits.  Therefore, this Court finds that Ms. Lopez is disabled.

**Order**

The ALJ's decision is reversed and this case is remanded for an award of benefits.

DATED this 2nd day of January, 2013.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge